UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KOFI N. PREMOH,
Plaintiff,

vs.

CITY OF CINCINNATI, et al.,
Defendants.

Case No. 1:15-cv-265

Beckwith, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

This matter is before the Court on defendants' motion to dismiss the complaint (Doc. 16), plaintiff's response in opposition to the motion (Doc. 20), and defendants' reply in support of the motion.[1] (Doc. 26).

## I. Background

Plaintiff Kofi N. Premoh, proceeding pro se, filed the verified complaint in this action on April 22, 2015. (Doc. 1). Plaintiff named as defendants the City of Cincinnati ("City") and Albert M. Hartung, Charlie Crawford, and Richard Schriewer, employees of the City's Division of Buildings and Inspections. Plaintiff brings claims under 42 U.S.C. § 1983 for violation of his due process rights and claims under state law.

### A. The Highland Avenue property, building permit, and violations notices

Plaintiff's complaint and the documents submitted by defendants in conjunction with the motion to dismiss allege the following[2]:

---

[1] Plaintiff filed a motion for extension of time to file a response to the motion to dismiss on October 8, 2015, which is moot since plaintiff subsequently filed a response. (Doc. 21).

[2] Defendants ask the Court to take judicial notice of a number of documents that are matters of public record without converting the motion to dismiss to a motion for summary judgment. (*See* Doc. 16, Exhs. A-R). These documents are properly considered in connection with defendants' Rule 12(b)(6) motion to the extent they are referenced in and "central" to plaintiff's claim. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.") (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation

Plaintiff is the owner of a building located at 2832 Highland Avenue, Cincinnati, Ohio. (Doc. 1, ¶ 5). In November 2011, plaintiff applied for a building permit to convert his building from a three-family dwelling to a single family home. (Doc. 16, Exh. M). The City's Division of Buildings and Inspections issued plaintiff a building permit on December 1, 2011, to renovate the building. (Id., Exh. N; Doc. 1, ¶ 10). The permit listed the following additional permits/inspections that were required: plumbing permit, certificate of occupancy permit, soil inspection, framing inspection, fire stop inspection, and final inspection. (Doc. 16, Exh. N). The permit stated that 24-hour notice was required for inspection and gave a name and number to call. (Id.). It gave the permit holder notice that the permit was void unless work was started by November 30, 2012. (Id.).

Plaintiff alleges he started work on the building in the spring of 2012. (Doc. 1, ¶ 14). However, an automobile accident in 2011 delayed his progress on repair of the building. (Id., ¶¶ 16-17). In October of 2012, the City's Building Department issued orders to plaintiff to make a number of exterior repairs to the building. (Id., ¶ 15; Doc. 16, Exh. F).

The City's Case History Report includes entries dated March 2013, May 2013, August 2013 and January 2014, stating that plaintiff had made no calls for inspection and there was no change in the appearance of the building. (Doc. 16, Exh. O). In March 2014, the City voided the 2011 permit. (Id.). Defendant Hartung, a City building inspector, noted the following reason in the Case History Report: "Twelve months have passed without start." (Id.).

In June 2014, the City notified plaintiff that he would be civilly fined or criminally prosecuted if he failed to make the repairs specified in the October 2012 order. (Id., Exh. G). On August 8, 2014, plaintiff received a "Notice of Civil Offense and Civil Fine" from City

---

omitted)). See also *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (documents attached to a motion to dismiss are considered part of the pleadings "if they are referred to in the plaintiff's complaint and are central to [the] claim.") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

2

Housing Inspector Ted Langston regarding the October 2012 orders. (Doc. 1, ¶ 20; Doc. 16, Exh. H). The notice advised plaintiff to either pay the fine or file a written answer within seven days. (Doc. 1, ¶ 21), Plaintiff filed a written answer to which he attached a copy of the building permit and a May 2013 appeal decision on a previous Notice of Civil Offense which was dismissed on the basis that plaintiff "had an active building permit and could not be cited." (Doc. 1, ¶¶ 19, 21, 22).

On or about August 20, 2014, Mr. Langston informed plaintiff by telephone that the building permit had been cancelled. (*Id.*, ¶ 22). Plaintiff requested a copy of the report concerning the cancellation from the permit division that same day, after which plaintiff learned that the permit had been cancelled on March 12, 2014. (*Id.*, ¶ 23). Although the City requires case history reports or reports of the inspector's field inspections, the report showed no record of an inspection to trigger cancellation of the permit. (*Id.*, ¶ 24). Further, the report indicated that cancellation of the permit did not require a supervisor's approval. (*Id.*).

On August 21, 2014, plaintiff complained in person or over the telephone to Hartung, Crawford and Schriewer that the building permit had been cancelled without notice. (*Id.*, ¶¶ 26, 27, 28). Each defendant advised plaintiff that he could not reinstate the permit and advised plaintiff to apply for another permit. (*Id.*). Plaintiff's application for another permit was denied with recommendations to revise and resubmit the plans. (*Id.*, ¶ 32). While plaintiff was in the process of reformulating the plans for the building, the City's Building Department took further action to condemn the building by ordering plaintiff to complete all necessary repairs as ordered in October 2012 or demolish the building within 30 days. (*Id.*, ¶ 35; Doc. 16, Exhs. I, J). Plaintiff timely appealed the condemnation order to the Board of Housing Appeals on February 19, 2015. (Doc. 16, Exh. K). Thereafter, plaintiff filed this federal lawsuit.

## B. Plaintiff's claims

Plaintiff seeks to hold defendant Hartung liable on the basis that Hartung, acting under color of state law, arbitrarily, recklessly, purposefully, and maliciously cancelled the permit. (*Id.*, ¶ 58). Plaintiff states there is no record of an actual inspection to justify cancellation of the permit and he did not receive notice of the cancellation through one of the three methods authorized by the permit application: mail, phone, or posting of a notice on the subject building. (*Id.*, ¶¶ 25, 87). Plaintiff alleges that Hartung withheld notification of the cancellation for more than five months and effectively denied plaintiff his right to pursue an appeal of the permit cancellation. (*Id.*, ¶¶ 29, 30, 85). Plaintiff asserts that Hartung cancelled the permit without supervisory approval and in his own unilateral discretion; he disregarded a previous inspection report that indicated work was in progress on the building; he disregarded obvious signs of work in progress on the building at the time he cancelled the permit; and he disregarded pictures entered into evidence at the May 2013 hearing depicting work in progress which became part of the City's records. (*Id.*, ¶¶ 84-86). Plaintiff asserts that Hartung did not comply with the City's requirement for serving notice of cancellation of a permit and of the 30-day deadline for filing an appeal, and he improperly advised plaintiff to apply for another permit to remedy the lack of notice. (*Id.*, ¶¶ 87, 88).

Plaintiff seeks to hold Hartung's supervisors – defendants Crawford and Schriewer – liable on the basis that they "encouraged and/or ratified Hartung's misconduct," "failed to investigate him," "knowingly acquiesced" in Hartung's actions, and acted with deliberate indifference toward plaintiff's constitutional rights. (*Id.*, ¶¶ 93, 95). Plaintiff alleges that the City requires its employees to file reports of an inspector's field report, to document the cancellation of a permit, to serve interested parties with a notice of cancellation of a permit, and

4

to document the service of notices of the cancellation of permits (*Id.*, ¶ 96), but there is no record of a field inspection or notice served upon plaintiff (*Id.*, ¶ 97). Plaintiff alleges that Hartung's supervisors knew or should have known that a policy to allow the employee to unilaterally cancel the permit at his "own unilateral discretion without supervisory approval bore a grave risk that constitutional misconduct" and the denial of plaintiff's appeal rights would result; however, the supervisors "made a conscious choice to vest absolute authority with Hartung" and allow him to cancel the permit at his own unilateral discretion and accord it finality without the opportunity for an appeal or supervisory approval. (*Id.*, ¶ 98). Plaintiff alleges that Hartung's supervisors knew for more than five months that Hartung had cancelled the permit in his own unilateral discretion without an official report of an inspection, a record of notification, or supervisory approval, but they did not investigate or remedy his misconduct and acted with deliberate indifference to the violation of plaintiff's due process rights. (*Id.*, ¶¶ 99, 100, 101).

Finally, plaintiff seeks to hold the City liable on the basis that the City has a "history of widespread and continuing pattern of employee misconduct" in several City departments, including the Police Department, the Building Department, and the Department of Neighborhood Housing and Planning. (*Id.*, ¶¶ 36-37). Plaintiff alleges that some of the misconduct was directly related to him and some of it was unrelated to him. (*Id.*, ¶ 38). He alleges that a number of federal court rulings put the City on notice that this pattern of misconduct was occurring, that its "training program" was constitutionally inadequate, and that it had failed to investigate alleged wrongdoing and had thereby ratified the employee misconduct. (*Id.*, ¶¶ 39-42). Plaintiff alleges that a City building inspector violated his Fourth Amendment rights in 2000 when the inspector failed to observe the City's written policies and procedures during the incident. (*Id.*, ¶ 67). Plaintiff also alleges that the City unlawfully declared him to be in default on a loan made

by the City to plaintiff in 1998 and filed a lawsuit against him in 2005 to collect on the debt, even though he had previously repaid the debt. Plaintiff states that the City's failure to meaningfully investigate, train, discipline and supervise its employees has resulted in a widespread pattern of employee misconduct. (*Id.*, ¶¶ 36-56).

Plaintiff further alleges the City has had "a custom of failing to investigate, discipline, adequately supervise and train its employees," of "ratifying and/or knowingly acquiescing in the constitutional misconduct of its employees," and of "failing to promulgate remedial policies for the misconduct of its employees and supervisors to prevent future constitutional misconduct." (*Id.*, ¶¶ 59, 60, 61). Plaintiff alleges that the City's customs were "the moving force" behind Hartung's act of cancelling the permit without notice, which was part of the City's pattern of arbitrarily depriving individuals of clearly established constitutional rights, and the cancellation without notice resulted from the City's custom of failing to adequately train, supervise and discipline its employees. (*Id.*, ¶¶ 64, 65, 83). He alleges that the City has relied on Hartung's misconduct to levy civil fines and condemn the building. (*Id.*, ¶ 90).

Based on these allegations, plaintiff brings claims for money damages pursuant to 42 U.S.C. § 1983 for violations of his due process rights under the Fourteenth Amendment to the United States Constitution and a claim for infliction of emotional distress and punitive damages under state law. (*Id.*, ¶¶ 104-123).

## II. Defendants' motion to dismiss the complaint

Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground the complaint fails to state a claim upon which relief can be granted. (Doc. 16). Based on the sequence of events, the City alleges that plaintiff has failed to establish facts or plead claims that would entitle him to relief. The City alleges that plaintiff's state law claims brought against

6

it for infliction of emotional distress must be dismissed pursuant to Ohio Rev. Code § 2744.02(A), which provides immunity from liability for damages to political subdivisions. Further, the City argues that plaintiff's claims for violation of his due process rights must be dismissed because plaintiff cannot establish the elements of a due process claim. Finally, the individual defendants claim they are entitled to qualified immunity on plaintiff's claims for violations of his constitutional rights.

### A. Rule 12(b)(6) standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the complaint need not contain "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), under Fed. R. Civ. P. 8(a)(2), "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court explained in *Iqbal*: "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks, citations, and alterations omitted).

Pursuant to *Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In reviewing a complaint, the Court is guided by the following principles: First, the general rule that the court must accept as true all allegations in the complaint "is inapplicable to legal conclusions." *Id.* This means that

7

conclusory recitals of the elements of a claim, including legal conclusions couched as factual allegations, "do not suffice." *Id.* at 678-79 ("[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A pro se litigant's filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers").

### B. Plaintiff's claims against defendant Albert Hartung, deceased

After defendants filed their motion to dismiss, defendants City of Cincinnati, Charlie Crawford, and Richard Schriewer gave notice on October 15, 2015, that defendant Hartung had died the previous day. (Doc. 23). The Court issued an Order dated December 31, 2015, noting that it did not appear that the Suggestion of Death had been served on plaintiff in accordance with the requirements of Fed. R. Civ. P. 25(a), which provides that a "statement noting death must be served" on the parties as provided under Fed. R. Civ. P. 5. The Court ordered defendants to serve the Suggestion of Death on plaintiff in accordance with Rule 5 and to file proof of service with the Court. (Doc. 27). Defendants filed a Certificate of Service with the Court on January 4, 2016, certifying that they had served a copy of the Suggestion of Death on plaintiff by regular mail at his address of record. (Doc. 28).

Defendants' service of the Suggestion of Death raises an issue as to whether plaintiff's claims against defendant Hartung should be dismissed. Federal law governs the procedure in

8

this situation. *Robertson v. Wegmann*, 436 U.S. 584, 587 n.3 (1984) (citing Fed. R. Civ. P. 25(a)(1)). Rule 25(a)(1) provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1). In a case involving multiple parties, Rule 25 provides: "After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties." Fed. R. Civ. P. 25(a)(2).

Assuming plaintiff's claims against defendant Hartung in his individual capacity survive his death, those claims must nonetheless be dismissed. Defendants certified that they served a copy of the Suggestion of Death on plaintiff by regular mail on January 4, 2016. (Doc. 28). Plaintiff did not move to substitute a party for Hartung within 90 days after service of the Suggestion of Death as required under Fed. R. Civ. P. 25(a)(1). The Court does not have discretion to excuse plaintiff's failure to comply with the 90-day limit of Rule 25(a)(1). Instead:

> [T]his rule 'directs the court to dismiss the action if substitution is not made within that time.' *Hofheimer v. McIntee*, 179 F.2d 789, 791 (7th Cir. 1950). This is a mandatory action to be taken by the court, and is not subject to or to be overridden by Rule 6(b), which provides courts discretion to extend time limits where there is a 'fail[ure] to act because of excusable neglect.' *See id*; Fed. R. Civ. P. 6(b); *see also Wallace v. Novartis Pharm. Corp.*, 984 F. Supp.2d 377, 383 (M.D. Pa. 2013) (noting that an attorney's 'failure [to comply with Rule 25(a)] cannot be attributed to excusable neglect'). Rule 25(a) clearly states that, if a party fails to file a motion for substitution within the prescribed time, the case must be dismissed. *See Patrick v. Sharon Steel Corp.*, 549 F. Supp. 1259, 1268 (W.D. Va. 1982); *Hofheimer*, 179 F.2d at 791 ('Under this authoritative statement, the trial court had no recourse except to follow the mandate of the rule.').

*Demyanovich v. Cadon Plating & Coatings, LLC*, No. 10-15119, 2014 WL 7204928, at *2 (E.D. Mich. Dec. 17, 2014) (court held that it was required to dismiss the plaintiff's case because the plaintiff had failed to file a motion to substitute within 90 days of the filing of the Suggestion of Death). Because plaintiff did not comply with the 90-day time limit prescribed by Rule 25(a)(1) in this case, the Rule mandates dismissal of plaintiff's claims against Hartung in his individual capacity. Fed. R. Civ. P. 25(a)(1). Accordingly, plaintiff's second, third, fourth, and fifth claims for relief (Doc. 1, ¶¶ 111-118), all of which seek to recover damages against Hartung under § 1983 for violation of plaintiff's due process rights or under state law for infliction of emotional distress, must be dismissed.

Plaintiff's claims against defendants Crawford, Schriewer, and the City (first, sixth, seventh and eighth claims for relief) are not abated by Hartung's death. Fed. R. Civ. P. 25(a)(2). Accordingly, the Court will consider whether these claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief.

### C. Plaintiff's § 1983 claims against defendants Crawford and Schriewer

To prevail on a claim brought under 42 U.S.C. § 1983, an individual must show that a person acting under color of law deprived the individual of a right secured by the United States Constitution or federal law. *Savoie v. Martin*, 673 F.3d 488, 493-94 (6th Cir. 2012). Plaintiff claims that defendants violated his procedural due process rights under the Fourteenth Amendment to the United States Constitution, which provides that no State may "deprive any person of life, liberty, or property" without "due process of law." To establish a procedural due process claim, a plaintiff must show "(1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he or she was not afforded

10

adequate procedures." *Paterek v. Vill. of Armada, Michigan,* 801 F.3d 630, 649 (6th Cir. 2015) (citing *Daily Servs., LLC v. Valentino,* 756 F.3d 893, 904 (6th Cir. 2014)).

Plaintiff brings claims against Hartung's supervisors, defendants Crawford and Schriewer, alleging that they encouraged and ratified Hartung's alleged misconduct, failed to investigate Hartung's misconduct, and acted with deliberate indifference toward Hartung's constitutional misconduct. (Doc. 1, ¶¶ 93, 94, 95). Even assuming plaintiff has alleged sufficient facts to establish a violation of his due process rights by Hartung, liability cannot be imposed on the supervisor defendants under § 1983 based on the facts presented here.

Individual liability cannot be imposed under § 1983 based on a theory of *respondeat superior.* See *Iqbal,* 556 U.S. 676. Section 1983 liability must be based on something more than the right to control employees. *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir. 1982)). A supervisor cannot be held liable for a failure to control, supervise, or train an employee unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [employees]." *Id.* (quoting *Hays,* 668 F.2d at 874). See also *McQueen v. Beecher Cmty. Schs.,* 433 F.3d 460, 470 (6th Cir. 2006) (to prove a claim for supervisor liability against the defendant, the plaintiff was required to show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."). Section 1983 liability can only be premised on active unconstitutional behavior and not a mere failure to act. *Greene v. Barber,* 310 F.3d 889, 899 (6th Cir. 2002). "This rule holds true even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually

11

participate in or encourage the wrongful behavior." *Greg v. Ohio Dept. of Youth Services*, 661 F. Supp.2d 842, 858 (S.D. Ohio 2009) (citing *Shehee*, 199 F.3d at 300 (prison officials not liable under § 1983 for failing to respond to grievances which alerted them of unconstitutional actions); *Stewart v. Taft*, 235 F. Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act")).

In support of his claims against Hartung's supervisors, plaintiff alleges that the City requires its employees to file reports of an inspector's field inspections, to document the cancellation of a permit, to serve interested parties with a notice of cancellation of a permit, and to document the service of a permit cancellation notice. (*Id.*, ¶ 96). Plaintiff alleges there is no record of a field inspection or notice served upon him. (*Id.*, ¶ 97). Plaintiff argues that the supervisor defendants knew or should have known that a policy to allow an employee to "unilaterally cancel the permit at his own unilateral discretion without supervisory approval bore a grave risk" that constitutional misconduct and the denial of plaintiff's appeal rights would result. (*Id.*, ¶ 98). Plaintiff alleges that the supervisors nonetheless made a conscious choice to vest absolute authority in Hartung, allow him to cancel the permit at his own unilateral discretion, and allow him to accord the permit cancellation finality without the opportunity for supervisory approval or an appeal by plaintiff. (*Id.*). He alleges the supervisors knew for more than five months that Hartung had cancelled the permit in "his own unilateral discretion" without an official report of an inspection, a record of notification, or supervisory approval; however, they did not investigate or remedy his misconduct and acted with deliberate indifference to the violation of plaintiff's due process rights. (*Id.*, ¶¶ 99, 100, 101).

Plaintiff's allegations, accepted as true, are insufficient to state a plausible claim under § 1983 against the supervisor defendants for violation of his due process rights. Plaintiff alleges

12

that the supervisors "encouraged" and "knowingly acquiesced" in Hartung's actions (*Id.*, ¶¶ 93, 95), but his conclusory allegations simply parrot the language of the case decisions applying the supervisory liability standard. Plaintiff has not alleged any *facts* to suggest that either Crawford or Schriewer was directly involved, or knowingly acquiesced, in Hartung's alleged denial of plaintiff's due process rights. Plaintiff's only allegations against the supervisor defendants are premised on their failure to exercise a greater degree of control over Hartung, to supervise Hartung, and to remedy Hartung's complained-about behavior. Rather than alleging facts to show that plaintiff's supervisors ratified or encouraged his misconduct, plaintiff asserts that Crawford and Schriewer actually took a hands-off approach and vested absolute discretion in Hartung. Allegations of this nature are insufficient to state a claim to relief under § 1983 against the supervisor defendants. *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must prove that [the supervisor defendants] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors."); *Wingo v. Tenn. Dept. of Corrections,* 499 F. App'x 453, 454-55 (6th Cir. 2012) (claim against supervisory state officials for failure to enforce prison policies to prevent employee misconduct and failure to investigate the conduct of correctional officers did not state a plausible claim under § 1983 absent allegations that those officials actively participated in the alleged misconduct). Plaintiff's § 1983 claims against supervisor defendants Crawford and Schriewer should therefore be dismissed for failure to state a claim to relief.

### D. Plaintiff's § 1983 claims against the City

Plaintiff brings claims directly against the City and against defendant Hartung in his official capacity under § 1983 for violations of plaintiff's procedural due process rights under the

Fourteenth Amendment. An official capacity suit brought under § 1983 is generally "only another way of pleading an action against an entity of which an officer is an agent" and therefore should be treated as a suit against the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, plaintiff's claims against Hartung in his official capacity are to be treated as claims against the City.

"It is firmly established that a municipality, or . . . a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978)). Rather, to state a claim for relief against a municipality for the plaintiff's alleged injuries, the complaint must allege facts showing that the misconduct giving rise to the plaintiff's injuries was the result of a policy, regulation, decision or custom promulgated by the city. *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014), *cert. denied*, 135 S.Ct. 1561 (2015) (citing *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)). The plaintiff must adequately plead: "(1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright*, 753 F.3d at 660 (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). *See also Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (municipal policy must be "moving force" behind constitutional deprivation). "The 'official policy' requirement [of *Monell* ] was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). To establish municipal liability based on a failure to act, a plaintiff must show (1) the existence of a clear and persistent pattern of municipal employees

14

violating the federal rights of third parties; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that its deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (4) a direct casual link between the defendant's custom and the constitutional deprivation. *Powers v. Hamilton Cnty. Public Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007).

Plaintiff's complaint fails to state a claim for relief under § 1983 against the City. The complaint simply parrots the language of case decisions which set forth the policy or custom standard for imposing municipal liability under § 1983. Plaintiff alleges no facts that could support the imposition of liability on the City for the alleged misconduct of its employee, Hartung. Plaintiff alleges the City had a "custom" of failing to "investigate, discipline, adequately supervise and train its employees"; "a custom of encouraging, condoning, ratifying and/or knowingly acquiescing in the constitutional misconduct of its employees"; and "a custom of failing to promulgate remedial policies for the misconduct of its employees and supervisors to prevent future constitutional misconduct." (Doc. 1, ¶¶ 59, 60, 61). Plaintiff further alleges that the City has a custom of deliberate indifference to the need to "effectively train, supervise, investigate, and discipline its employees. . . ." (*Id.*, ¶ 62). Plaintiff alleges that the City's "customs" were the moving force behind Hartung's act of unlawfully cancelling his permit without notice, and the cancellation resulted from the City's custom of failing to adequately train, supervise, and discipline its employees. (*Id.*, ¶ 64). Plaintiff's conclusory allegations that the City had "customs" that were the moving force behind the violation of his due process rights are the type of legal conclusions couched as factual allegations that do not pass muster under *Twombly* or *Iqbal*. Plaintiff has failed to identify a specific policy, connect any such policy to the City itself, and allege facts to support a finding that he incurred the particular injury he

15

complains about as a result of the execution of that specific policy. *See Garner v. Memphis Police Dep't,* 8 F.3d 358, 363-64 (6th Cir. 1993) (citing *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds, Frantz v. Vill. of Bradford,* 245 F.3d 869 (6th Cir. 2001)). *See also Burgess v. Fischer,* 735 F.3d 462, 479 (6th Cir. 2013) ("[E]ven assuming there was an underlying constitutional violation, we affirm the dismissal of the *Monell* claim because Plaintiffs have failed to set forth sufficient facts to establish an unconstitutional custom or policy."). Plaintiff has not alleged any other instances of misconduct that plausibly support an inference of a custom or a pattern in this case. Plaintiff relates two prior incidents of alleged wrongdoing by the City, but he fails to connect those incidents to the misconduct alleged in the complaint. *Powers,* 501 F.3d at 607.

Because there are no factual allegations that would "raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, plaintiff's conclusory allegations of an unidentified custom, without more, fail to state a claim for relief under § 1983. Although pro se complaints are held to less stringent standards than complaints prepared by an attorney, a complaint cannot rest on bare assertions of legal conclusions. *Id.* Plaintiff's assertions are much too conclusory to permit the Court to draw the reasonable inference that the City of Cincinnati is liable for the specific instances of misconduct alleged in the complaint. Plaintiff's § 1983 claim against the City for deprivation of his due process rights should be dismissed.

### E. Supplemental jurisdiction

Pursuant to 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over state law claims that are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy. However, the Court has discretion to decline to exercise supplemental jurisdiction if it "has dismissed all claims over

16

which it has original jurisdiction . . . ." *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012) (citing 28 U.S.C. § 1367(c)(3)). It is appropriate that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims in light of his failure to state a claim to relief under federal law.

### IT IS THEREFORE RECOMMENDED THAT:

1. The claims against defendant Hartung (deceased) in his individual capacity be **DISMISSED** pursuant to Fed. R. Civ. P. 25(a)(1).

2. The motion to dismiss by defendants Crawford, Schriewer and the City of Cincinnati (Doc. 16) be **GRANTED.**

3. The claims against defendants Crawford, Schriewer and the City of Cincinnati under 42 U.S.C. § 1983 be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief.

4. The Court decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over plaintiff's claims brought under state law against defendants Crawford, Schriewer and the City of Cincinnati.

Date: 5/13/16

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KOFI N. PREMOH,
    Plaintiff,

vs.

CITY OF CINCINNATI, et al.,
    Defendants.

Case No. 1:15-cv-265

Beckwith, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).